**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **SALVADOR BUSTOS-CASTANEDA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:04-0925** |
| | ) | |
| **MARTY ANDERSON, Warden,** | ) | |
| **FCI Beckley,** *et al.* | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On August 27, 2004, Plaintiff, acting *pro se* and in confinement at Federal Correctional

Institute [FCI] Beckley, Beaver, West Virginia,[1] filed his Complaint in this matter claiming entitlement

to relief pursuant to Bivens v. Six Unknown Named Federal Agents of Federal Bureau of Narcotics,

403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2] (Document No. 1.) By Standing Order also filed

on August 27, 2004, this matter was referred to the undersigned United States Magistrate Judge for

the submission of proposed findings of fact and a recommendation for disposition pursuant to 28

U.S.C. § 636(b)(1)(B). (Document No. 3.)

Plaintiff names as Defendants the following persons employed to provide health services at

FCI Beckley: (1) Marty Anderson, then Warden of FCI Beckley; (2) Dr. Dominick McLain, Clinical

Director, FCI Beckley; (3) Kevin Canterberry, Correctional Counselor; (4) Kim White, Mid-Atlantic

---

[1] The Declaration of Sharon Wahl, Legal Instruments Examiner for the Consolidated
Legal Center at FCI Beckley, indicates that Plaintiff was convicted in the United States District
Court for the Middle District of North Carolina of violating 8 U.S.C. § 1326(A) and (B)(2),
Reentry of Deported Alien Felon, and was sentenced on November 8, 2000, to an 80-month term
of imprisonment. (Document No. 16, Declaration of Sharon Wahl, ¶ 3.)

[2] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less
stringent standard than if they were prepared by a lawyer and therefore, they are construed
liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Regional Director; and (5) Harrell Watts, National Appeals Administrator. Essentially, Plaintiff complains that the Defendants acted with deliberate indifference to his serious medical needs and inflicted upon him cruel and unusual punishment, all in violation of his rights under the Eighth Amendment of the United States Constitution. (Document No. 1, p. 4.) He further complains that the Defendants violated his right to due process under the Fifth and Fourteenth Amendments. (Id.) Plaintiff states that on August 25, 2003, he was diagnosed as having ileofemoral deep vein thrombosis [DVT] of the right leg, which he claims was "contracted while serving time in the segregated housing unit," and underwent a surgical placement of a Greenfield filter to prevent the lodging of blood clots in his lungs. (Id., pp. 6, ¶¶ 1-2, p. 11, ¶ 1.) Following his surgery, he was prescribed Coumadin, which caused him to experience several side effects, namely dizziness, "abdominal pain, abrupt and intense pain and swelling in the right leg, foot, and toes." (Id., p. 6, ¶ 3.) Plaintiff contends that the Defendants failed either to address his complaints of severe pain, or transfer him to another facility where he could obtain appropriate medical treatment. (Id., p. 7, ¶ 4.) He complains that the over-the-counter pain medication he purchases from the commissary does not alleviate his severe pain and swelling. (Id., p. 8, ¶ 9.) With respect to the Coumadin, Plaintiff states:

> Affiant is in fear for his physical safety when Affiant was anticoagulated with Coumadin that cannot be mixed with Acetaminophen, and the most serious risk associated with Coumadin treatment are hemorrhage in any tissue or organ, and less frequently, the destruction of skin tissue cells or gangrene which result in death or permanent disability.

(Id., p. 11, ¶ 3.) He alleges that Defendant Dr. McLain acted with deliberate indifference to his safety and serious medical condition when he prescribed him 500 milligrams of Acetaminophen, knowing that it could "inhibit platelet aggregation, and can cause gastrointestinal bleeding, peptic ulceration and/or perforation that is a deadly risk to [him.]" (Id., ¶ 4.) Furthermore, Plaintiff complains that the Defendants have refused to provide him with physical therapy that is required to treat DVT, because

2

FCI Beckley is not equipped "to deal with [his] medical condition." (Id., pp. 8-9, ¶ 11.) Plaintiff seeks $425,000.00 in compensatory damages. (Id., p. 4.)

Pending is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Memorandum of Law in Support, filed on January 10, 2005. (Document Nos. 15-16.) In their Memorandum in support of their Motion, Defendants contend that Plaintiff's Complaint must be dismissed for the following reasons: (1) The Court does not have personal jurisdiction over Defendants Kim White and Harrell Watts (Document No. 25, pp. 7-9.); (2) Defendants Marty Anderson, Kim White, Harrell Watts, and Kevin Canterberry cannot be liable as supervisors on the basis of the doctrine of *respondeat superior* (Id., pp. 9-15.); (3) The facts do not support Plaintiff's claim of deliberate indifference to his serious medical needs and therefore, Plaintiff cannot meet the objective and subjective components of the applicable Eighth Amendment analysis (Id., pp. 15-20.); (4) The Defendants are entitled to qualified immunity. (Id., pp. 20-28.); and (5) Plaintiff's claims against the Defendants in their official capacities are barred by the doctrine of sovereign immunity. (Id., p. 28.)

With respect to Plaintiff's Eighth Amendment claim of deliberate indifference, Defendants specifically contend that Plaintiff has at most, "described a dissatisfaction with the particular type of care he has received." (Id., p. 15.) His dissatisfaction however, does not demonstrate that the medical care he received was inappropriate. (Id.) Defendants further contend that Plaintiff received thorough, timely, and appropriate medical treatment on at least 30 occasions over a period of 15 months, between August 25, 2003, and November 18, 2004, while confined at FCI Beckley. (Id., p. 18.) He is examined in the Chronic Care Clinic every three months with respect to his DVT and has lab work done on a monthly basis to monitor his bleeding and medications. (Id., p. 19.) For these reasons, Defendants contend that Plaintiff cannot prove that Plaintiff received improper medical care or that

3

they acted with deliberate indifference to his serious medical needs. (Id.)

In support of their claim that they are entitled to qualified immunity, Defendants assert that Plaintiff cannot prove their conduct violated his constitutional rights and that the constitutional rights violated were clearly established at the time when they acted in violation of them. (Id., pp. 20-27.) Defendants further claim that Defendants Marty Anderson, Kim White, Kevin Canterberry, and Harrell Watts were in administrative/supervisory positions and had no direct involvement in treating Plaintiff's medical conditions. (Id., pp. 9-15.) For this reason, these Defendants assert that Plaintiff's claim that they violated his constitutional rights has no merit. All of the Defendants have submitted Declarations in support of their Motion. (Document No. 16, Exhibits 2-6.) Additionally, the Defendants submitted Declarations from Sharon Wahl, Legal Instruments Examiner at FCI Beckley. (Id., Exhibit 1.)

By Order filed on January 11, 2005, the Court notified Plaintiff of his right to respond to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment within thirty days of its entry pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). (Document No. 17.) On February 9, 2005, Plaintiff filed his Response in opposition to the Defendants' Motion, with copies of certain medical records attached as Exhibits. (Document No. 18.)

Having examined Defendants' Motion and the Responses and Replies thereto, together with exhibits, the undersigned has concluded that the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, must be granted.

## THE APPLICABLE STANDARDS

### Rule 12(b)(6) Dismissal

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering

a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to the Plaintiff, and must take them as true.  See Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).  "Because a dismissal under Rule 12(b)(6) is accorded *res judicata* effect, such dismissals are generally disfavored by the courts."  Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991).  When faced with such a Motion, "the magistrate judge should . . . limit [her]self to a consideration of whether plaintiff's allegations, standing alone and taken as true, pleaded jurisdiction and a meritorious cause of action."  Id. at 1473. In consideration of the Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations contained in the Plaintiff's Complaint as true and draw all reasonable inferences in favor of the Plaintiff from them. The Court must determine whether the Plaintiff has asserted a cognizable claim against the Defendants and alleged facts which, if true, would support such a claim.

Rule 12(b) of the Federal Rules of Civil Procedure provides, in part, that when a party offers a Rule 12(b)(6) motion that presents matters outside the pleadings, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed.R.Civ.P. 12(b). The Defendants have offered in support of their Motion to Dismiss, or in the Alternative, for Summary Judgment, attachments to their brief consisting of Affidavits from the Defendants and Sharon Wahl. As matters outside the pleadings have been offered, the Court is constrained to treat Defendants' Motion as one for Summary Judgment under Rule 56. Because the Defendants' Motion was styled as one for dismissal or for summary judgment and because the Court issued Plaintiff Roseboro Notice, the Court finds that Plaintiff was on sufficient notice that the Motion could be treated as one  for summary judgment. Furthermore, the Roseboro Notice informed Plaintiff of his right to file opposing affidavits and that his failure to respond to the Motion, could result in the

denial of the relief sought in his Complaint and dismissal of his suit.

**Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"[I]n order to withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged condition. The Eighth Amendment does not prohibit cruel and unusual prison conditions; it prohibits cruel and unusual punishments. If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the Amendment." Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993). In view of this standard, if no facts or inferences which can be drawn from the

6

circumstances will support Plaintiff's Eighth Amendment claim viewing the evidence in a light favorable to Plaintiff, summary judgment is appropriate. If it is evident that there are genuine issues of material fact respecting the alleged infringement upon Plaintiff's Eighth Amendment right, summary judgment must be refused.

## <u>DISCUSSION</u>

### A.     The District Court lacks personal jurisdiction over Defendants Kim White and Harrell Watts.

Defendants Kim White and Harrell Watts, residents of the State of Maryland, challenge this Court's personal jurisdiction over them. A court validly exercises personal jurisdiction over a non-resident defendant when (1) a statute specifically authorizes the service of process over a non-resident defendant and (2) the service of process comports with the Due Process Clause of the Fourteenth Amendment of the United State Constitution. <u>See</u> <u>In re Celotex Corp.</u>, 124 F.3d 619, 627-28 (4th Cir. 1997). Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure provides that a federal district court may exercise personal jurisdiction over a defendant in the manner provided by state law. <u>See</u> <u>Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctr., Inc.</u>, 334 F.3d 390, 395 (4th Cir. 2003). To determine whether the District Court may assert personal jurisdiction over a nonresident defendant, the Court must determine whether the exercise of personal jurisdiction is authorized by the state's long-arm statute, and then determine whether the exercise of jurisdiction will comport with the requirements of the Due Process Clause of the Fourteenth Amendment. <u>See</u> <u>Worldwide Volkswagon Corp. v. Woodson</u>, 444 U.S. 286, 290, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); <u>In re Celotex Corp.</u>, 124 F.3d at 627.The Fourth Circuit has recognized however, that "[b]ecause the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction. Rather, the statutory inquiry

7

necessarily merges with the Constitutional inquiry."[3] In re Celotex Corp., 124 F.3d at 627-28.

Constitutional due process requires that the nonresident defendant must have sufficient "minimum contacts" with the State of West Virginia such that requiring the defendant to defends his interests here would not "offend traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed.2d 95 (1945)(*quoting* Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed.2d 278 (1940)). These "minimum contacts" necessary to confer jurisdiction must be "purposeful" such that the defendant "purposefully avails

---

[3] The West Virginia long-arm statute, W.Va. Code § 56-3-33, authorizes personal jurisdiction over a nonresident defendant who engages in any of the following activities:

(1) Transacting any business in this state;

(2) Contracting to supply services or things in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he or se regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he or she might reasonably have expected such person to use, consumer or be affected by the goods in this state: Provided, That he or she also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Having an interest in, using or possessing real property in this state; or

(7) Contracting to insure any person, property or risk located within this state at the time of contracting.

W.Va. Code § 56-3-33(a)(2004).

[himself] of the privilege of conducting business within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); see also In re Celotex Corp., 124 F.3d at 628. "This occurs where the contacts 'proximately result from actions by the defendant himself that create a 'substantial connection' with the forum state,' Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)(emphasis in original), or where the defendant's efforts are 'purposefully directed' at the state. Id. at 476, 105 S.Ct. 2174." Vass v. Volvo Trucks N. Am., Inc., 304 F.Supp.2d 851, 854 (S.D. W.Va. 2004). Thus in determining whether minimum contacts exist, the Court is required to consider: "(1) the quantity of the contacts, (2) the nature and quality of the contacts, (3) the source and connection of the cause of action with those contacts, (4) the interests of the forum state in convenience, and (5) whether the defendant invoked benefits and protection of the law of the forum state." Eastern Mktg. Corp. v. Texas Meridian Prod. Co., 798 F.Supp. 363, 365 (S.D. W.Va. 1992).

Defendants Kim White and Harrell Watts are residents of the State of Maryland and were employed with the BOP, Kim White at the Mid-Atlantic Regional Office in Annapolis Junction, Maryland, and Harrell Watts at the Central Office in Washington, D.C., during all times relevant to Plaintiff's Complaint. (Document No. 16, Exhibits 3-4, pp. 41-44.) Neither of these Defendants are a resident of, or own property in West Virginia, nor have they ever worked or resided in West Virginia. (Id.) The only contacts these Defendants have with the State of West Virginia is through the mailing of responses to administrative remedies to inmates confined in West Virginia. Although Defendant Kim White's employment with the BOP requires her "to receive, investigate, and respond to properly filed appeals of request for administrative remedies by inmates in the Mid-Atlantic Region," she did not personally respond to any of Plaintiff's appeals. (Id., pp. 43-44, ¶¶ 4-6.) Rather, Ron Daniels, as acting Regional Director denied Plaintiff's appeal on April 16, 2004. (Id., ¶ 4.) Likewise, the only

9

connection Defendant Harrell Watts had with the forum state was his act of denying Plaintiff's appeal to the Central Office. (Id., p. 41, ¶ 4 and Document No. 1, p. 17.) There is no evidence that Defendants Kim White and Harrell Watts were otherwise involved in the decisions regarding Plaintiff's medical care. Accordingly, the undersigned finds that Plaintiff has not established the minimum contacts requirements necessary to assert personal jurisdiction over Defendants Kim White and Harrell Watts. Accordingly, Defendants' Motion to Dismiss (Document No. 15.) in this respect must be granted.[4]

### B.    Plaintiff's claims against the Defendants in their official capacities are barred by the doctrine of sovereign immunity.

The doctrine of sovereign immunity prohibits a Bivens action against federal BOP employees for monetary damages in their official capacities. See Reinbold v. Evers, 187 F.3d 348, 355 n.6 (4th Cir. 1999)("While Bivens actions allow for recovery of money damages against federal officials who violate the United States Constitution in their individual capacities, Bivens does not allow for recovery of money damages, or suits in general, against the government itself."). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Official capacity suits "generally represent only another way  of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87

---

[4] The Court notes that when a defendant challenges the Court's personal jurisdiction over a non-resident pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." In re Celotex Corp., 124 F.3d at 628. Plaintiff bears the burden of establishing a "prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." Id. Thus, the Court is required to construe all allegations in the light most favorable to the plaintiff. In this case, Plaintiff alleged in his response that diversity jurisdiction was sufficient to vest the District Court with jurisdiction to hear this case. Drawing all inferences in the light most favorable to Plaintiff, the undersigned finds that jurisdiction over Defendants Kim White and Harrell Watts is lacking.

L.Ed.2d 114 (1985). Accordingly, the undersigned finds that Plaintiff has failed to state a claim against the Defendants in their official capacities and to the extent he is requesting monetary damages from them in their official capacities, his claims must be dismissed.

## C.   *Respondeat Superior* / **Supervisory Liability.**

The allegations stated in Plaintiff's Complaint of violations of his constitutional rights are cognizable under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[5] The United States

---

[5] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472-74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18-21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court

Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d at 355 n. 7. Furthermore, the Fourth Circuit  recognized in Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001), cert. denied, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002), that "[i]n a Bivens suit there is no *respondeat superior* liability. Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Instead, liability is personal, based upon each defendant's own constitutional violations." Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied sub nom., Reed v. Slakan, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Id. at 373. Evidence of a supervisor's continued inaction in the face of

---

found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19-20, 100 S.Ct. at 147172. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. Id.

Defendant Marty Anderson contends that Plaintiff has failed to demonstrate how he was personally involved in violating Plaintiff's constitutional rights under the Eighth Amendment. (Document No. 16, p. 13.) Defendant Anderson argues that "Plaintiff provides no evidence that Defendant Anderson tacitly authorized or was indifferent to any physician's alleged constitutional violations." (Id.) Assuming that Defendant Marty Anderson's subordinates were deliberately indifferent, "Defendant Anderson was entitled to rely on his medical staff's judgment as to the appropriate care of Plaintiff." (Id.) In Response, Plaintiff alleges that Defendant Marty Anderson "was directly in charge of his staff and their lack of medical treatment." (Document No. 18, p. 3.) He further alleges that Defendant Marty Anderson was deliberately indifferent when he failed "to supervise his employees[] in F.C.I. Beckley's medical department, namely, Defendant McClain." (Id.) Acknowledging that a warden is entitled to rely on the medical staff's judgment, Plaintiff avers:

> [W]hen an inmate has to be rushed to the outside hospital more than once, as well as on Chronic Care continuously, one would think that the Warden would take a closer look into the medical situation that is plaguing the Plaintiff, instead of "just taking Dr. McClain's word for it." It would also add more credence to Dr. McClain's word if he has a good track record of adequate medical care, but there has been several instances where there has been serious medical breakdowns at FCI-Beckley, including the death of an inamte, who just before he died, was transferred to a medical facility for a transplant. . . . If he would have investigated Bustos' case, he would have arranged a transfer to a facility that could handle his condition.

(Id., p. 4.)

The undersigned finds that Plaintiff has failed to specify any act taken by Defendant Marty Anderson that violated his constitutional rights. The evidence of record reveals that Plaintiff was monitored in the Chronic Care Clinic and transferred to an outside hospital on two occasions. As discussed below, nothing about this medical treatment violated Plaintiff's constitutional rights and

13

Defendant Marty Anderson cannot be found to have tacitly authorized any unconstitutional medical care. Accordingly, Plaintiff has improperly raised his claim against Defendant Marty Anderson under the doctrine of *respondeat superior*, has failed to establish supervisory liability and therefore, Defendant Marty Anderson must be dismissed as a Defendant in this civil action.

Furthermore, Plaintiff has failed to state a claim against Defendants Kim White, Harrell Watts, and Kevin Canterberry, upon which relief can be granted. Essentially, Plaintiff alleges that Defendants Kim White and Harrell Watts violated his constitutional rights with respect to their responses to administrative remedies. Specifically, Plaintiff avers:

> The entire Administrative Remedy process has failed Plaintiff Bustos which rises all the way to the National Appeals Administrator. If there isn't accountability at all levels, then inmate/plaintiff Bustos' Fifth, Fourteen, and Eighth Amendment rights will continue to be violated, he will continue to live in pain with no relief from such pain, and he will be in fear of his life or limb.

(Document No. 18, p. 5.) As previously stated, Kim White did not respond to any of Plaintiff's administrative remedy appeals and therefore, had no direct involvement in this matter. With respect to Defendant Kevin Canterberry, he states in his Declaration that upon receipt of inmate complaints, he contacts the various departments and requests information about the inmate's claims and then relays that information to the inmate. Defendants correctly assert that his reliance on medical staffs' responses, cannot form the basis of liability under Bivens. See Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990)("[It would be an unprecedented extension of the theory of supervisory liability to charge these wardens, not only with ensuring that [the inmate] received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures - procedures learned during several years of medical school, internships, and residencies. No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers'

expertise.). The undersigned agrees with the Defendants and finds that none of the Defendants can be held liable for their reliance on staff responses to Plaintiff's administrative remedies. Accordingly, the Defendants' Motion must be granted with respect to these claims.

> ### D.   Plaintiff has not stated an Eighth Amendment claim of inadequate medical care.

The Eighth Amendment protects against the infliction of "cruel and unusual punishments." As a general matter, prohibited punishments include those which "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Thus under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that the Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent that such conditions are restrictive and even harsh, they are part of

15

the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. at 2399; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995), *citing* Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S.Ct. 2321, 2323-2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (*citing* Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d at 166 (*quoting* Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1993)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851-852 (4th Cir. 1990), as follows:

16

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, Moffitt v. Loe, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.). First therefore, Plaintiff in this case must allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish each Defendant's awareness that he was receiving

17

constitutionally inadequate medical care and disregard for the serious physical and mental consequences.

The allegations and factual background as it may be found in Plaintiff's Response to Defendants' Motion and the medical records submitted therewith and Defendants' Declarations do not present a claim of constitutional magnitude. First, the undersigned finds that Plaintiff did not suffer a medical need which gave rise to a substantial risk of serious harm or a condition for which lack of treatment caused the sort of continuous severe acute pain which suffices to support an Eighth Amendment claim. Viewing the evidence favorably to the Plaintiff, the undersigned finds that Plaintiff experienced swelling and pain in his right leg radiating from his diagnosed condition of ilefemoral DVT, which is a condition where the blood clots in the vein, high in the leg. (Document No. 16, Exhibit 2, Declaration of Defendant Dr. McLain, ¶¶ 5C-D.) Furthermore, Plaintiff suffered abdominal discomfort which may have been a side effect of certain medications. No doubt, Plaintiff was uncomfortable from time to time as a consequence, but his condition was monitored and was not life threatening, potentially disabling or acute during the period of time in question. Accordingly, the undersigned finds that Plaintiff's medical condition was objectively not sufficiently serious to give rise to a viable Eighth Amendment claim. The undersigned further finds that the Defendants were not deliberately indifferent to his serious medical needs. The record reveals that Plaintiff was examined by the Defendants on several occasions who cautiously monitored his leg and stomach condition and medications. He was examined in the Chronic Care Clinic on a regular basis and was transferred to an outside hospital on at least two occasions when his condition was more severe than usual.

In view of the foregoing, it is clear that Plaintiff has failed to establish a claim of inadequate medical care. The allegations and factual background as it may be found in Plaintiff's Response to

Defendants' Motion and the medical records submitted therewith and Defendants' Declarations do not present a claim of constitutional magnitude. Plaintiff has not demonstrated that his medical care was untimely or improper. Viewing the evidence favorably to Plaintiff, the undersigned finds that on March 17, 2003, Plaintiff was seen in the Chronic Care Clinic. (Document No. 16, Exhibit 2, Declaration of Defendant Dr. McLain, ¶ 5A.) He advised the medical staff that he previously broke his right leg, but was not examined by a physician. (Id.) Plaintiff's right leg appeared to be rotated out, but was not swollen. (Id.) On August 25, 2003, a Physician's Assistant examined Plaintiff in the FCI Beckley Special Housing Unit [SHU] pursuant to his complaints that his right leg began swelling the day before and had gotten worse. (Id., ¶ 5B.) At that time, Defendant Dr. McLain was called to examine Plaintiff, who directed that he be transferred to an outside hospital for immediate treatment. (Id.) Plaintiff was diagnosed by the outside hospital on August 26, 2003, as having DVT and was placed on Heparin, an intravenous blood thinner and Coumadin, a prescription blood thinner. (¶ 5C.) On August 28, 2003, the outside hospital altered its diagnosis and determined that Plaintiff's condition was right ilefemoral DVT and continued him on Heparin and Coumadin. (¶ 5D.) Plaintiff was returned to FCI Beckley on August 30, 2005, where he was given pain medication and continued on Coumadin. (¶ 5E.)

During a follow-up examination on September 2, 2003, Plaintiff presented right leg pain and swelling. (¶ 5F.) On a second follow-up exam, conducted September 5, 2003, Plaintiff was continued on his pain medication and blood work was ordered. (¶ 5G.) Plaintiff was examined by Health Services staff on September 9, 2003, at which time he advised that his pain was decreasing. (¶ 5H.) He was given a wheelchair and an extra pillow for one week and was instructed to keep his right leg elevated. (Id.) The Health Services staff further discussed with Plaintiff the possible side effects from taking the Coumadin. (Id.) On September 13, Plaintiff was again examined and his condition appeared to have improved; his pain and swelling had decreased and he was able to walk to the dining hall. (¶ 5I.) After

19

receiving the results of Plaintiff's blood work, his Coumadin dosage was adjusted on September 18, 2003. (¶ 5J.)

On September 26, 2003, Plaintiff again complained of pain and a burning sensation in his right leg. (¶ 5K.) His wheelchair and extra pillow were reissued for two weeks. (Id.) Plaintiff's examination on September 29, revealed soreness in his leg, but that otherwise, his condition was improving. (¶ 5L.) He did not have any shortness of breath at that time. (Id.) Plaintiff's pain had increased by his next examination on October 1, 2003, and he presented leg discoloration. (¶ 5M.) He was immediately transferred to an outside hospital. (Id.) His condition at the hospital the next day was stable and a CAT scan of his abdomen and pelvis was performed. (¶ 5N.) On October 5, 2003, a Greenfield filter was surgically placed to prevent blood clots from lodging in his lungs. (¶ 5O.) He returned to FCI Beckley on October 8, 2003, where he remained on Coumadin and voiced no medical complaints. (¶ 5P.)

Plaintiff reported to Health Services on October 9, 2003, requesting a cane and Tylenol for pain, which items were issued to him. (¶ 5Q.) He was again examined on October 20, at which time he said his right leg was getting better, although swelling remained present. (¶ 5R.) Plaintiff reported to Health Services on December 1, 2003, complaining of right abdominal pain which had persisted the last two weeks. (¶ 5S.) The medical staffs' examination revealed no findings and he was continued on the same course of treatment. (Id.) On December 29, 2003, Plaintiff advised that his leg was better, the swelling had decreased, and that he elevated his leg at night. (¶ 5T.) Plaintiff again reported to Health Services on January 27, 2004, complaining of abdominal pain for the past five months, but the examination revealed no findings (¶ 5U.) On January 30, 2004, he complained of pain in his right arm and shoulder, which had persisted for three weeks. (¶ 5V.) Defendant Dr. McLain's exam revealed no findings and Plaintiff stated that he laid on his arm at night. (Id.) On February 13, 2004, he again

complained of right abdominal pain and asked to be checked for a hernia. (¶ 5W.) The exam revealed nothing and stockings were issued for his legs. (Id.) Dr. McLain informed Plaintiff that his condition did not meet the clinical conditions for a transfer to a medical facility. (Id.)

Plaintiff reported to Health Services on February 19, with complaints of pain in the area of his right kidney. (¶ 5X.) The exam revealed nothing definite. (Id.) On March 8, a repeat ultrasound was conducted of Plaintiff's right leg and abdominal area, which indicated chronic DCT, but was otherwise normal. (¶ 5Y.) Plaintiff reported to Health Services on March 22, complaining that his leg continued to swell with increased activity and prolonged standing. (¶ 5Z.) He was advised that these symptoms were common in DVT patients. (Id.) On May 14, June 21, and August 26, 2004, Plaintiff reported to Health Services with further complains of right abdominal pain and burning. (¶¶ 5AA-CC.) The examinations on these dates were unremarkable, although he was prescribed Zantac for heartburn. (Id.) On June 21, his leg was swollen, but presented good pulses without discoloration. (¶ 5BB.) On September 20, 2004, Plaintiff continued to complain of right abdominal pain, but on exam, there was no pain noted upon palpation. (¶ 5DD.) His right leg continued to be swollen. (Id.) Plaintiff complained of stomach upset and increased gas on October 18, 2004, and mild pain in the upper abdomen was noted on exam. (¶ 5EE.) His Zantac prescription was refilled. (Id.)

On November 4, 2004, Plaintiff complained of pain, this time in his left abdomen, and the exam revealed mild tenderness on palpation. (¶ 5FF.) Dr. McLain prescribed Tylenol and educated him on his medication. (Id.) On November 10, Plaintiff was examined pursuant to his complaints of pain on the left side of his chest which had persisted for two weeks. (¶ 5GG.) An EKG was performed with normal results and it was determined the pain was associated with the muscle. (Id.) Finally, on November 18, 2004, Plaintiff was diagnosed with bronchitis and placed on antibiotics. (¶ 5HH.)

In view of the foregoing, it is clear that Plaintiff has failed to establish a claim of inadequate medical care. He was examined by the Defendants on several occasions who cautiously monitored his medical conditions and pain medications. He received continual care through the Chronic Care Clinic, which consisted of regular blood work, ultrasounds, and careful monitoring of the swelling and coloration of his right leg. Although Plaintiff believes he should not be taking Coumadin with pain medications containing Acetaminophen, the record reveals that he was educated about the side effects of the Coumadin which evidences Dr. McLain's awareness of his taking the two medications together. His disagreement with the prescribed medication therefore, does not rise to the level of an Eighth Amendment violation. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.") For these reasons, the undersigned finds that Plaintiff's Eighth Amendment claim fails because there is no evidence that Defendants acted subjectively with deliberate indifference to his serious medical needs. No facts or inferences can be drawn from the circumstances which present a genuine issue of material fact supporting Plaintiff's Eighth Amendment claims viewing the evidence in a light favorable to Plaintiff, and therefore summary judgment is appropriate.

**E.      Due Process.**

It is clear that interests protected by the Due Process Clauses of the Fifth and the Fourteenth Amendment are not implicated in this case.[6] It is fundamental that procedural due process only arises

---

[6] The Fourteenth Amendment applies when those alleged to have violated the inmate's constitutional rights were acting under color of State law and is therefore inapplicable in this case because Plaintiff was in federal custody and Defendants were federal employees when the circumstances which form the basis for Plaintiff's claims occurred.

when an inmate's liberty or property interest is deprived. <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The Supreme Court held in <u>Sandin</u> that interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . ., nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id</u>., 515 U.S. at 484, 115 S.Ct. at 2300 (Citations omitted) Thus, for example, as the Supreme Court determined in <u>Sandin</u>, 515 U.S. at 486, 115 S.Ct. at 2301, disciplinary segregation does not create an "atypical and significant hardship" triggering due process protections. <u>See also</u> <u>Thomas v. Ramos</u>, 130 F.3d 754, 760-62 (7th Cir. 1997). Clearly, the focus in assessing whether an inmate's claims of due process violations have any merit is upon the nature of the deprivation which the inmate alleges. Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life []", the inmate's claims have no merit. Thus, absent any indication of the unconstitutional deprivation of liberty, when a person is in federal custody by virtue of a judgment of conviction, his claims of constitutionally inadequate medical care are evaluated under the Eighth Amendment. When a person is in federal custody as a pretrial detainee on the other hand, his claims are evaluated under the Due Process Clause of the Fifth Amendment. <u>Loe v. Armistead</u>, 582 F.2d 1291, 1293 - 94 (4th Cir. 1978), <u>cert. denied</u>, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980). In any event, the standard is the same in evaluating claims of constitutionally inadequate medical care under the Fifth and Fourteenth and the Eighth Amendments. <u>See</u> <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 581 - 582 (3d Cir. 2003). Plaintiff was in federal custody pursuant to a judgment of conviction at the time the alleged Defendants' deliberate disregard of his serious medical needs occurred, there is no indication of any unconstitutional restraint upon Plaintiff's

23

liberty and in any event application of the Eighth Amendment standard yields the conclusion that Plaintiff's claims have no merit. For these reasons, the undersigned finds that Plaintiff's claim that Defendants violated his due process rights is without merit.

### F.      Qualified Immunity Defense.

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there was no protection against suits accusing them of misconduct in the performance of their public duties. Federal officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). In Harlow, the Court stated that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may determine

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. In a case in which the defense of qualified immunity is raised, the Court looks to the evidence before it in the light most favorable to the plaintiff when conducting its inquiry of whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L.Ed.2d 773 (1996). The District Court must determine first

24

whether "particular conduct occurred," and second, "whether uncontroverted conduct represented the [violation of a constitutional right]."  Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996), reh'g en banc denied, 105 F.3d 174, cert. denied, 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997). Only if the Court determines that the plaintiff alleges the violation of a clearly established constitutional right does the Court then proceed to determine whether a reasonable person in the defendants' position should have known that their conduct was illegal.  Id.; Leverette v. Bell, 247 F.3d 160, 166 (4th Cir. 2001), cert. denied, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001)(The Fourth Circuit follows a two-step sequential analysis for determining the validity of a qualified immunity defense: (1) the Court must determine whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and, if so, (2) the Court then proceeds to consider whether that right was clearly established at the time of the purported violation.); Pittman v. Nelms, 87 F.3d 116, 199 (4th Cir. 1996); DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995).

> The responsibility imposed on public officials to comply with constitutional requirements is commensurate with the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct.  It is not measured by the collective hindsight of skilled lawyers and learned judges. * * * "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

Jackson v. Long, 102 F.3d 722, 730-31 (4th Cir. 1996). Finding therefore consistently with Harlow that issues of qualified immunity should be resolved at the earliest possible stage of the litigation, the Fourth Circuit has adopted a "heightened pleading standard." Dunbar Corp. v. Lindsey, 905 F.2d 754, 763 (4th Cir. 1990); see also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(noting that qualified immunity is "an immunity from suit rather than a mere defense to liability" and "such pretrial matters as discovery are to be avoided if possible[.]" (Emphasis in opinion.)). The

"heightened pleading standard" requires specification of the clearly established rights involved and relates to the degree of factual specificity required in the Complaint. Dunbar Corp., 905 F.2d at 763.

The undersigned finds that the facts viewed in the light most favorable to the Plaintiff do not establish a deprivation of an actual constitutional right. Defendants' qualified immunity defense is therefore meritorious, and Plaintiff's claims must be dismissed for this additional reason.

## **PROPOSAL AND RECOMMENDATION**

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **GRANT** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 15.), **DISMISS** this case with prejudice, and **REMOVE** this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby FILED, and a copy will be submitted to the Honorable United States District Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v.

Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff, *pro se*.

ENTER: August 30, 2005.

R. Clarke VanDervort
United States Magistrate Judge

27